# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| ) | |
| v. ) | CRIMINAL NO. 2:12-CR-183-DBH |
| ) | |
| PATRICK R. DOYON, ) | |
| ) | |
| DEFENDANT ) | |

## DECISION AND ORDER ON DEFENDANT'S
## MOTION TO SUPPRESS EVIDENCE

The defendant has moved to suppress all evidence arising out of IRS officers' allegedly unlawful seizure of his construction vehicle.  On May 16, 2013, I held an evidentiary hearing.  These are my findings of fact and conclusions of law.  Concluding that the IRS officers' actions did not violate the Fourth Amendment, I **DENY** the defendant's motion to suppress.

### FACTUAL BACKGROUND

The defendant, Patrick Doyon, owed federal taxes dating back to 2002. After Doyon stopped providing updated information about his income, the IRS began searching for assets to seize in order to collect back taxes.

Doyon lived at his girlfriend's home on Hillside Estates Drive, a private road in Greene, Maine.  Hillside Estates Road Owners Association owned and maintained the road.  Doyon and his girlfriend were members of the Association.  The deeds to each parcel on Hillside Estates Drive and its adjoining roads conveyed easement rights over Hillside Estates Drive.

According to the President of the Hillside Estates Road Owners Association, there were twelve houses on Hillside Estates Drive.  Some of the homeowners had to drive past Doyon's girlfriend's property in order reach their homes from the public road.  In addition to the homeowners and their invited guests, emergency, delivery, and maintenance vehicles used the road, and Central Maine Power Company held an easement for the installation and maintenance of electrical poles and cables along the road.

The IRS officer assigned to the case, Joline Hendershot, discovered that Doyon owned a large forklift known as a Loadall, and obtained her supervisors' approval to seize it.  On July 15, 2010, she visited the home where Doyon lived with his girlfriend.  Standing on the private road at the top of the driveway to Doyon's girlfriend's house, she observed the Loadall parked in the yard. Hendershot then called a towing company and scheduled the seizure of the Loadall for the following day.  But when she returned with her supervisor on July 16, 2010, the Loadall was no longer visible from the road.  Hendershot's supervisor accordingly advised her to seek a writ of entry before seizing the asset.

On the morning of August 4, 2010, Hendershot returned to Doyon's address in an attempt to contact Doyon.  Doyon was not home, but the Loadall was once again visible from the road at the top of his driveway.  Because the Loadall was in plain view, Hendershot believed that a writ of entry was no longer necessary, and arranged for the seizure of the property that afternoon. Hendershot returned to the property with another IRS officer and tagged the Loadall with a seizure notice.  When the tow truck driver arrived, however, he

2

informed Hendershot that his flatbed truck was unsuitable for the job and he would need to return with different equipment.  When Hendershot returned to Doyon's address the following day, the Loadall was gone.  Doyon later refused to reveal the location of the Loadall to an IRS Special Agent.  In 2012, he was charged with forcible rescue of seized property under 26 U.S.C. § 7212(b).

Both Hendershot and the other IRS officer testified that they never saw any signs or obstructions along Hillside Estates Drive or Doyon's driveway.  On the other hand, the President and Treasurer of the Hillside Estates Road Owners Association both testified that "No Trespassing" and "Private Road" signs were consistently posted at various points along the road since the 1990s.  Doyon submitted as evidence three photographs taken in March 2013 showing a "Private Road: Keep Out" sign on a utility pole just past the entry to Hillside Estates Drive.  See Def.'s Exs. 6-8.

## ANALYSIS

Doyon argues that the IRS officers violated the Fourth Amendment by trespassing on Hillside Estates Drive, a private road.  He cites the Supreme Court's decision in G.M. Leasing Corp. v. United States, 429 U.S. 338, 354-55 (1977), as recognizing a Fourth Amendment right against unreasonable tax seizures. He further points out that while both G.M. Leasing and Rogers v. Vicuna, 264 F.3d 1 (1st Cir. 2001), ultimately upheld IRS seizure of vehicles, both cases emphasized the public visibility of the seized property.  See G.M. Leasing, 429 U.S. at 351 ("The seizures of the automobiles in this case took place on *public streets*, parking lots, or other open places, and did not involve any invasion of privacy." (emphasis added)); Rogers, 264 F.3d at 2 ("[T]he cars

were completely visible from the street.  There were no signs on the property, no gates, and no other obstructions that could have prevented the agents from either seeing the vehicles from the *public street* or from reaching the vehicles." (emphasis added)).  Because the IRS officer here could see the seized property only after traveling some distance down Hillside Estates Drive, a private road, Doyon contends that G.M. Leasing and Rogers are distinguishable and that the officer violated his Fourth Amendment rights in the private road.

The government raised two initial objections in its response to the defendant's motion.  I address them briefly.  (The government did not mention them at the hearing.)

In its brief, the government challenged Doyon's standing to object to the IRS officers' trespass on Hillside Estates Drive because "there is no evidence in this case that the defendant owns or is a part owner of Hillside Estates Drive or is a member of the association that purportedly owns the road" and he "does not own the home in which he resides" with his girlfriend.  Government's Resp. in Opp'n to Def.'s Mot. to Suppress at 7 (ECF No. 29).  But testimony at the hearing established that Doyon and his girlfriend were both members of the Hillside Estates Road Owners Association.  Moreover, the government's argument is inconsistent with Supreme Court precedent extending Fourth Amendment standing even to overnight guests.  See Minnesota v. Olson, 495 U.S. 91 (1990).  Doyon was far more than an overnight guest: he permanently resided at the home with his girlfriend, and thus is entitled to assert a Fourth Amendment right in the property.

The government also argued in its brief that the suppression of unlawfully obtained evidence is improper in a prosecution for forcible rescue of seized property under 26 U.S.C. § 7212(b).  It cited the First Circuit's decision in United States v. Roccio, 981 F.2d 587, 590 (1st Cir. 1992), for the proposition that the government need only prove that the seizure "was performed by a proper official with general authority under the tax code to make the seizure" and that "[c]hallenges to the legality of a seizure based on other considerations must fail."  Government's Resp. in Opp'n to Def.'s Mot. to Suppress at 7-8.  This argument is irreconcilable with G.M. Leasing's explicit recognition of a Fourth Amendment right against unreasonable tax seizures.  It also takes Roccio wholly out of context.  The quoted language from Roccio and the other cases the government cited address the validity of the underlying lien or the IRS's compliance with its own procedures, not the legality of the seizure under the Fourth Amendment.  Indeed, Roccio itself proceeded to consider a Fourth Amendment challenge.  The First Circuit rejected it not because such challenges were categorically inapplicable, but rather because the automobile was "seized in an area in which [the defendant] had no expectation of privacy," namely a driveway exposed to the public.  981 F.2d at 591.

I turn then to the issue actually addressed at the hearing, the Fourth Amendment status of the private road from which the IRS officers viewed the Loadall in Doyon's driveway.  Although the road was privately owned and may indeed have been marked with at least one "Private Road: Keep Out" sign at the time of the seizure (although neither of the IRS officers recalled seeing such a sign), those facts are not dispositive.  The IRS officers may have committed a

common-law trespass, but the Supreme Court has stated that "[t]he law of trespass . . . forbids intrusions upon land that the Fourth Amendment would not proscribe.  For trespass law extends to instances where the exercise of the right to exclude vindicates no legitimate privacy interest."  Oliver v. United States, 466 U.S. 170, 183 (1984).  The Fourth Amendment issue, therefore, is governed not by the principles of property law and trespass, but rather by the longstanding distinction between "open fields" and "curtilage" recognized in Fourth Amendment doctrine at least since Hester v. United States, 265 U.S. 57 (1924).  The Supreme Court has explained in both Hester and Oliver that Fourth Amendment protection extends only to the curtilage, the land immediately surrounding and associated with the home, and that the surrounding "open fields" enjoy no Fourth Amendment protection.  (The term "open fields" "may include any unoccupied or undeveloped area outside of the curtilage" and "need be neither 'open' nor a 'field' as those terms are used in common speech."  Oliver, 466 U.S. at 180 n.11.)

Oliver itself rejected a Fourth Amendment challenge in a case where agents discovered a secluded marijuana patch after driving down a private road on the defendant's farm marked "No Trespassing" and walking around a locked gate also marked "No Trespassing."  Several other courts both before and after Oliver have also upheld searches in which officers intruded on a posted private road.  In United States v. Hensel, 699 F.2d 18 (1st Cir. 1983), a pre-Oliver opinion authored by then-Judge Breyer, the First Circuit rejected a Fourth Amendment challenge to evidence obtained by agents who intruded on a driveway off a private road in rural Maine marked with "No Trespassing" signs

and blocked with a chain.  Noting that the road was open to other subdivision residents, the First Circuit concluded that "the evidence could lead the district court reasonably to conclude that the defendants should have expected that a license plate on a jeep parked on their driveway . . . would not remain hidden from the occasional passerby."  Id. at 32.  In United States v. Roberts, 747 F.2d 537 (9th Cir. 1984), the Ninth Circuit similarly upheld the denial of the defendant's motion to suppress evidence that the police obtained after driving up a shared private road marked with "No Trespassing" and "Private Road Keep Out" signs.  Relying heavily on the recent Oliver decision, the court offered the following rationale:

> A shared unobstructed road is incongruent with the common law concept of the curtilage as "the area around the home to which the activity of home life extends."  Used in common with residents of five other houses, the private home is only a means to reach a public road.  The private road does not provide the setting for intimate activities of home life.  The activities conducted on a road—driving a car, riding a bike, or walking—are impersonal, public activities.  Moreover, the road is easily accessible to utility companies and police and fire departments and it is reasonable to assume that the residents would expect these public agencies to use the road in performing their services. Finally, if the road were within the curtilage, the boundaries of the curtilage could conceivably extend indefinitely.  For these reasons, the agents' conduct in driving up the road did not constitute a search.

Id. at 541-42 (citing Oliver, 466 U.S. at 182 n.12).  Other cases have gone farther and rejected Fourth Amendment challenges even where the private road was not shared with neighbors.  See United States v. King, 928 F.2d 409, 1991 WL 36337 (9th Cir. Mar. 15, 1991) (unpublished); United States v. Ramapuram, 632 F.2d 1149 (4th Cir. 1980).

In short, <u>Oliver</u> and these other cases make clear that "No Trespassing" and "Keep Out" signs lack the talismanic power that Doyon would like them to have. Not every common-law trespass amounts to a Fourth Amendment violation.[1] Like the roads in <u>Hensel</u> and <u>Roberts</u>, numerous neighbors and their guests used Hillside Estates Drive, as did delivery vehicles, electrical and road maintenance vehicles, and emergency services.[2] Doyon has thus failed to show that the IRS officers either violated a reasonable expectation of privacy in the road or trespassed on a constitutionally protected area.

Finally, although he did not raise this argument at the hearing, Doyon also suggested in his brief that the IRS officers were not able to see the front of his residence (and thus the Loadall) from the top of his driveway on Hillside Estates Drive. Def.'s Mot. to Suppress at 2 (ECF No. 27). However, the testimony and exhibits introduced at the hearing uniformly established that

---

[1] The open fields doctrine remains good law in the wake of the Supreme Court's recent Fourth Amendment decisions in <u>United States v. Jones</u>, 132 S. Ct. 945 (2012), and <u>Florida v. Jardines</u>, 133 S. Ct. 1409 (2013), both of which mark a return to property law principles by considering whether the government has physically intruded upon a constitutionally protected area. Both <u>Jones</u>, 132 S. Ct. at 953 & n.8, and <u>Jardines</u>, 133 S. Ct. at 1414, cite <u>Oliver</u> and clarify that open fields remain unprotected because they are not a constitutionally protected area enumerated in the Fourth Amendment. The theory of <u>Jones</u> is thus "*not* that the Fourth Amendment is concerned with '*any* technical trespass that led to the gathering of evidence,'" 132 S. Ct. at 953 n.8 (citation omitted), but rather only with trespasses in constitutionally protected areas.

[2] At oral argument, defense counsel attempted to distinguish these other uses of the road by stating that delivery, maintenance, and emergency vehicles enter the road with the owners' "implicit consent," but that the owners' consent did not extend to the IRS officers. This argument is unsupported by the Fourth Amendment caselaw. Although consent may justify an otherwise unlawful search, the reverse does not hold true; *lack* of consent does not render an otherwise lawful search unconstitutional. <u>Cf</u>. <u>Oliver</u>, 466 U.S. at 182-83 ("[W]e reject the suggestion that steps taken to protect privacy establish that expectations of privacy in an open field are legitimate. . . . The test of legitimacy is not whether the individual chooses to conceal assertedly 'private' activity. Rather, the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment.") & n.13 ("Certainly the Framers did not intend that the Fourth Amendment should shelter criminal activity whenever persons with criminal intent choose to erect barriers and post 'No Trespassing' signs.").

the Loadall was in fact visible from the road at the time it was seized.  Doyon should have expected that a large piece of construction equipment parked in front of his home "would not remain hidden from the occasional passerby." Hensel, 699 F.2d at 32.  Since they could see the equipment from the road, the IRS officers did not violate Doyon's Fourth Amendment rights by proceeding down the unobstructed driveway to seize the equipment.  See Rogers, 264 F.3d at 6; Roccio, 981 F.2d at 591 ("[T]here is no expectation of privacy in a driveway that is exposed to the public." (citing Hensel, 699 F.2d at 32-33)).

## CONCLUSION

For the foregoing reasons, I **DENY** the defendant Doyon's motion to suppress.

**SO ORDERED.**

**DATED THIS 29TH DAY OF MAY, 2013**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

9